GARDNER HOTEL SUPPLY OF HOUSTON, APPELLANT, *v.* ESTATE OF WILBUR I. CLARK, DECEASED, RESPONDENT.

No. 5292

SOUTHERN NATIONAL BANK OF HOUSTON, APPELLANT, *v.* ESTATE OF WILBUR I. CLARK, DECEASED, RESPONDENT.

No. 5293

October 18, 1967                    432 P.2d 495

*Singleton, DeLanoy & Jemison,* of Las Vegas, for Appellants.

*Foley Brothers,* of Las Vegas, for Respondents.

## OPINION

By the Court, ZENOFF, J.:

These appeals arise from orders denying motions for leave to file late creditor's claims. Both cases involve similar fact situations and present the same legal issue, and are therefore joined for appellate consideration.

On July 22, 1965 Wilbur Clark and William Ward executed an agreement with General Electric Credit Corporation guaranteeing the conditional sales contract entered into on that date by Wilbur Clark's Crest Hotel and the appellant, Gardner Hotel Supply of Houston. On that date also, Gardner assigned the conditional sales contract to General Electric Credit Corporation. The guaranty agreement provided that the death of the guarantor should not discharge or affect the agreement.

On August 28, 1965 Wilbur Clark died. Alton Lipkin, a Vice-President of the appellant corporation, noted the death as published in the Houston newspaper, August 29, 1965.

On October 18, 1965 General Electric reassigned the conditional sales contract to the appellant. On October 19, 1965 the appellant assigned the same to C.I.T. Corporation of Houston. No further assignment back to the appellant appears from the record, but since no issue is raised as to the status of Gardner as a claimant, and we affirm the trial court, that question becomes moot.

On September 17, 1965 notice was published pursuant to NRS 147.010.[1] On December 17, 1965 the period for filing claims against the estate had run.

On April 12, 1966 Gardner filed a motion for leave to file a creditor's claim in the amount of $13,157.26. In support of said motion, Gardner presented the affidavit of Lipkin, copies of the conditional sales agreement, the guaranty contract and various assignments and reassignments. In his affidavit, Lipkin stated that he first became aware of the notice to creditors on March 25, 1966 through his attorney, who had been sent to Las Vegas sometime in March. The motion to file the claim was denied.

As to the appeal of Southern National Bank of Houston, the record discloses that sometime prior to his death, Wilbur Clark and William Ward secured a loan from the bank in the amount of $300,000 for two hotel projects. They both signed a note and personally guaranteed repayment of the loan. Neither the note, nor the guaranty agreement, nor any other writing concerning this transaction were made a part of the record.

---

[1]NRS 147.010: *"Notice to creditors: Publication, posting and form.*

"1. Immediately after his appointment, every executor or administrator shall:

(a) Cause to be published a notice of his appointment as executor or administrator in some newspaper published in the county, if there be one; if not, then in such newspaper as may be designated by the court or judge.

(b) Post a copy of the notice at the courthouse of the county. The notice shall be published at least once a week for 4 weeks.

"2. If any executor or administrator shall neglect, for 15 days after his appointment, to give notice of his appointment as prescribed in subsection 1, the court shall revoke his letters.

"3. The notice shall be substantially in the following form:

### "NOTICE TO CREDITORS

"Notice is hereby given that the undersigned has been duly appointed and qualified by the (giving the title of the court and the date of appointment), as executor or administrator, as the case may be, of the estate of............................, deceased. All creditors having claims against the estate are required to file the same, with proper vouchers attached, with the clerk of the court, within 3 months after the first publication of this notice.

"Dated................................"

On August 29, 1965 Mr. H. H. Kuhlmann, a Vice-President of the bank, noted Clark's death in the Houston newspaper. On November 12 he was advised by Ward that J. L. Donnelly, whom Kuhlmann knew to be Clark's attorney in the past, had been named executor and, in truth, he was so advised several times subsequent.

Donnelly stated in his affidavit that he had conversed with Kuhlmann concerning the bank loan and the estate's financial status. The record further shows that Kuhlmann had been advised by others of the estate proceedings, and that Donnelly and Herbert Clark were coexecutors. The bank moved, after the time for filing claims had expired, to file its claim, which was denied.

The sole issue is directed to the refusal of the trial court to allow the appellants to file late claims against the decedent's estate pursuant to NRS 147.040.

Nevada's nonclaim statute, NRS 147.040, provides:

"1. All persons having claims against the deceased must, within 3 months after the first publication of the notice specified in NRS 147.010, file the same, with the necessary vouchers, with the clerk of the court, who shall file and register each claim.

"2. If a claim be not filed with the clerk within 3 months after the first publication of the notice, it shall be forever barred; but when it shall be made to appear by the affidavit of the claimant, or by other proof, that he had no notice as provided in this chapter, to the satisfaction of the court or judge, it may be filed at any time before the filing of the final account."

Notice as provided in NRS 147.040 was duly published and posted on September 17, 1965. The statute provides for publication in some newspaper in the county or as designated by the court. It informs the creditors of the identity of the executor and the court which made the appointment, that the claims are to be filed with the clerk of the court, and that all claims must be filed within three months. There is no dispute that the notice filed, posted, and published complied with the statute. Appellants contend that the mere posting and publishing of the notice was not enough to bind them if they did not have actual knowledge of the existence of the estate proceedings, and that absent such knowledge, the trial court was bound to allow them to file their claims.

1. The spirit and letter of the Nevada statutes relating to the filing of claims and the administration of estates, speak to

the policy of our laws that efficient and expedient administration is essential. In re Delaney's Estate, 41 Nev. 384, 171 P. 383 (1918). Our nonclaim statute, NRS 147.040, is plainly written and should be enforced as designed. Pacific States S. L. & B. v. Fox, 25 Nev. 229, 59 P. 4 (1899). The statute contemplates all claims, whether contingent or noncontingent, to be filed within three months. The holding of Pruett v. Caddigan, 42 Nev. 329, 176 P. 787 (1918), to the extent that it suggests the contrary, is hereby overruled. Further, the statute makes no distinction due to residence and applies equally to resident claimants as well as nonresident claimants. Messenger v. Rutherford, 225 N.E.2d 94 (Ill. 1967). Such construction in no way causes claimants to suffer injustice where the purpose of the statute is to bar those who are indifferent, careless or dilatory in their attitude toward filing claims. See In re McCracken, 224 N.E.2d 181 (Ohio 1967).

2. Our reading of NRS 147.040 warrants the conclusion that Nevada's nonclaim statute permits trial court discretion, upon good cause shown, to either allow the filing of a claim after it is barred; or upon failure to show good cause for not having filed, to refuse permission to file a late claim.

3. Knowledge of death is sufficient to put the claimant on notice that probate proceedings will follow, and charges him with the responsibility of further inquiry. Knowledge of death, or any knowledge of the estate proceedings, coupled with the failure to act after receipt of the information are enough to support the exercise of the lower court's discretion either to grant permission to file the claim, or to deny it. Cf. Pacific States S. L. & B. v. Fox, supra (where permission to file a late claim was granted). See also: Chalaby v. Driskell, 390 P.2d 632 (Ore. 1964); In re Marrs' Estate, 107 N.E.2d 148, 159 (Ohio 1952); In re Wyckoff Estate, 152 N.E.2d 141 (Ohio 1958); In re Rathe's Estate, 59 N.W.2d 164 (Neb. 1953); Federal Land Bank of Omaha v. Bonnett, 284 N.W. 97 (Iowa 1939).

The claimants knew of Clark's demise and several conversations were held with the executors and other interested persons. Both claimants are sophisticated in the business world, experienced in the significance of filing claims in the given situations. That the filing period in this state is shorter than that of their own state is insufficient reason to excuse their failure

to file on time. The trial court properly denied the motions for leave to file late claims.

Affirmed.

Thompson, C. J., Collins, J., Batjer, J., and Mowbray, J., concur.