JOHN H. PAHLMANN, as Successor Trustee for Two Trusts for the Benefit of JOSEPH DAVIDOW NEWMAN, Appellant, v. FIRST NATIONAL BANK OF NEVADA and MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Co-Executors, Respondents.

No. 5821

March 2, 1970                    465 P.2d 616

*Calvin C. Magleby,* of Las Vegas, and *Israel Treiman,* of St. Louis, Missouri, for Appellant.

*Wiener, Goldwater & Galatz, John Marshall* and *J. Charles Thompson,* of Las Vegas, for Respondents.

# OPINION

By the Court, COLLINS, C. J.:

This is an appeal from an order and judgment thereon denying a motion to file late claims against the Estate of Joseph Newman, deceased, by a successor trustee of two trusts for alleged breach of trust by decedent, the original trustee.

We reverse the lower court's order and remand for a further hearing.

In 1946, Joseph and Beatrice Newman, residents of St. Louis, Missouri, established identical trusts for their infant son, Joseph D. Newman. Joseph was named trustee for both trusts, which were to terminate when Joseph D. reached age 50. If he died before 50, his surviving wife and children, if any, were alternate beneficiaries. Joseph D. is now married and has one child. In 1966 the trust instruments were amended to allow trustee Joseph to appoint successor trustees by will or other instrument after first giving written notice to beneficiaries entitled to income from the trusts. Also at that time, Joseph D. was named co-trustee, but his powers were greatly restricted and the instruments vested the "sole right to exercise all the powers, duties, rights and privileges" over the trust to Joseph as senior trustee or the successor trustees named by Joseph. In 1967, after Joseph moved to Las Vegas, Nevada, he and Beatrice were divorced. On December 8, 1967, Joseph was killed in an airplane crash in Lima, Peru.

John H. Pahlmann and the Mercantile Trust Company, N. A., both of St. Louis, were named as co-executors in Joseph's will. Pahlmann declined the appointment. Mercantile and the First National Bank of Nevada, Las Vegas, were then appointed co-executors and letters testamentary issued to them in Las Vegas on February 15, 1968.

The will also named Pahlmann as successor, senior trustee of the two trusts. He did not, however, immediately assume those duties. Neither did he expressly decline them.

The basic documents relating to Joseph's estate were found among his effects in Las Vegas. The First National Bank assembled them and placed them in two boxes which were mailed to the Mercantile Trust Company in St. Louis. Both boxes arrived there, but one box, assumed to have contained the original trust instruments, was inadvertently destroyed as

trash. That box and the documents it contained were never found. Its loss created the problems causing this suit and resulting appeal.

The evidence before the lower court, although conflicting, indicates Pahlmann, upon the advice of counsel, would not accept the responsibilities as successor trustee until the original documents conclusively establishing his authority were found. They were never found. Unsigned copies of the amendments to the trust instruments were finally located in an attorney's office in St. Louis, and upon the petition of Joseph D. Newman, as beneficiary, contending they were copies of the lost originals, Pahlmann was finally appointed successor, senior trustee of the two trusts by order of a St. Louis court on July 25, 1968. He immediately entered upon his duties.

Meanwhile, the co-executor of Joseph's estate in Las Vegas gave notice to creditors. The time for filing claims expired on May 16, 1968.

Approximately 1½ months after his court appointment as successor, senior trustee, Pahlmann submitted claims against Joseph's estate, alleging Joseph Newman, as trustee of the two trusts, had made unlawful loans from trust funds in the amount of $307,328 to companies owned and operated by Joseph D. and a cashier's check in the amount of $32,078.24, payable to and endorsed by Joseph D. and given to his father, Joseph, for repayment to the trusts of a loan made by Joseph to third parties, was never credited to the trusts but apparently was cashed and used by Joseph personally. The co-executors of Joseph's estate denied the claims because they were filed after notice to creditors had expired on May 16, 1968. Suit was brought, and a judgment entered denying the right to file the claims, from which this appeal was taken.

The lower court, in ruling upon the motion to file late claims, presumed that Pahlmann or Joseph D. Newman were trustees prior to the time when notice to creditors expired on May 16, 1968, found they had actual notice of the probate of Joseph Newman's estate in Las Vegas, and relying upon our decision in Gardner Hotel Supply v. Estate of Clark, 83 Nev. 388, 432 P.2d 495 (1967), and Continental Coffee Co. v. Estate of Clark, 84 Nev. 208, 438 P.2d 818 (1968), denied the motions for late filing of the claims. We think that was error requiring reversal and remand for further hearing and findings.

With those circumstances in mind, we think the issues dispositive of the appeal before us are these:

I. May a person named as a trustee be deemed a trustee before he acts in that capacity if he has not expressly accepted or rejected the appointment?

II. If the statutory time for filing claims against an estate runs before a person becomes a trustee and he had notice as an individual within the statutory time period, may he, after appointment as a trustee, claim lack of notice that would warrant his filing late claims on behalf of the trust?

1. We think it was necessary for the lower court to first decide from the conflicting evidence before it whether Pahlmann or Joseph D. were trustees of the two trusts prior to the running of the statutory time for filing of claims against Joseph's estate. If they were, then the court's finding they had actual notice of the pending of the probate would, under certain circumstances, preclude the late filing of the $307,328 claim under our *Gardner* and *Continental* decisions. The $32,-078.24 claim is governed by a different rule and would not be barred in any event, as will be hereinafter discussed.

A person designated a trustee by another must accept the trusteeship before he is chargeable with those responsibilities. See Mavrich v. Grier, 3 Nev. 52, 57 (1867). In G. Bogert, The Law of Trusts and Trustees § 150, at 64–65 (2d ed. 1965), it is written: "The cases fully sustain the position that a trustee named in a deed or will always has the election of accepting the trust or rejecting it. *No one can be compelled to undertake the burdens of trusteeship against his desire.* Thus, *acceptance* of a trust is necessary to the commencement of a trusteeship with a particular trustee acting in the representative position." (Emphasis added.) See also 1 A. Scott, The Law of Trusts § 35, at 287 (3d ed. 1967), and Restatement (Second) of Trusts § 102, comment (a) (1959).

Neither acceptance nor disclaimer requires any specific formality to be effective. Conduct will suffice. See Restatement (Second) of Trusts, supra, comments (b) & (c); G. Bogert, supra, § 150, at 72–73; 2 A. Scott, supra, § 102.1. Inaction on the part of a named trustee should be deemed a disclaimer. The rule we think should be followed is stated in G. Bogert, supra, at 72–73: "Since the trust does involve a relation requiring high good faith and much responsibility, it seems of doubtful expediency to indulge in presumptions of acceptance where there is no affirmative action by the

trustee. Such presumptions are fictional. It is better to demand proof of some active step in order to fasten the burdens of the trusteeship on a particular individual."

2. If Pahlmann and Joseph D. are determined not to be trustees prior to the expiration of notice to creditors on May 16, 1968, then it does not appear to us there was anyone with authority to act on behalf of the trusts who could be chargeable with notice during the running of the statutory period within which to file claims against Joseph Newman's estate. NRS 147.040 and our decisions in *Gardner* and *Continental* presume there is some person in either an individual or authorized representative capacity capable of receiving the statutory notice. Prior to their appointment or acceptance of trusteeship, neither Pahlmann nor Joseph D. would have capacity to act for the trusts or to receive notice for the trusts.

3. The claim for failure of Joseph to pay over to the trusts the check for $32,078.24 in repayment of a loan made by him from trust funds is not a claim within the contemplation of NRS 147.040(1). This court held in Reed v. District Court, 75 Nev. 338, 341 P.2d 100 (1959), that "not all rights asserted against a decedent are included within the bar of nonclaim. An example is the recovery of property held by the decedent in trust. Since such property does not form a portion of the assets of the estate, its recovery in no wise diminishes the estate and a claim to it is not a claim against the property constituting the estate." Accord, Lewis v. Neblett, 10 Cal.Rptr. 441 (Dist.Ct.App. 1961).

If there is cash in the estate of Joseph Newman, deceased, and funds from the cashed check can be traced by the successor trustee into his estate, those funds would be trust property and not an asset of the estate subject to creditors' claims under NRS 147.040. The claim is for breach of trust to recover specific, fungible property not belonging to Joseph Newman, the individual, nor his estate. See G. Bogert, supra, § 924, at 331.

4. Since this case must be retried, we think the court and counsel should consider whether the $307,328 claim is one that existed at all during the running of the statutory period prescribed by NRS 147.040. The facts appear to show that Joseph Newman's lending of those trust funds was a breach of his fiduciary duty to the trusts. If it is determined that his breach of duty arose from fraud or mistake, it may be that

NRS 11.190(3)(d)[1] would apply. If a claim against an estate is equivalent to a civil action which can only be commenced "after the cause of action shall have accrued" (NRS 11.010), a determination may be required whether the successor trustees Pahlmann and Joseph D. Newman acquired sufficient knowledge of the facts giving rise to the claim or cause of action before the running of the statutory period.

5. We hold that Joseph D. Newman's failure to take action, if found to be a trustee, before the claim period ran, or as a beneficiary, does not estop the trusts from making claim against the estate of Joseph Newman. Joseph D.'s wife and child were contingent beneficiaries if he were to die before 50. Their rights in the trust property were entitled to protection. His right to act, even if he were deemed to be a trustee prior to running of the claim period, was so limited it is doubtful the duty even fell to him. His failure as a beneficiary to act, if such is found to be the case, cannot be allowed to prejudice the rights of the other beneficiaries whose rights were entitled to be protected by the senior successor trustee Pahlmann.

Accordingly, the judgment is reversed and the proceeding remanded for rehearing in accordance with the views expressed herein.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.

---

[1]A cause of action for fraud or mistake is not "deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."